CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 24 2013

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 5:09cr00015-1 |
| | ) | |
| v. | ) | <u>2255 MEMORANDUM OPINION</u> |
| | ) | |
| | ) | By: Samuel G. Wilson |
| SERGIO MUJICA. | ) | United States District Judge |

Petitioner Sergio Mujica, a federal inmate proceeding *pro se*, brings this motion pursuant to 28 U.S.C. § 2255, challenging the validity of his guilty plea and the 350-month sentence that resulted from his role in the purported largest methamphetamine conspiracy ever prosecuted in the Western District of Virginia.[1] Mujica claims that the evidence was insufficient to support his sentence, that the court committed several errors, that his sentence was unreasonable, that his plea was not voluntary, and that his counsel provided ineffective assistance. The government has filed a motion to dismiss Mujica's § 2255 motion. The court finds that Mujica's insufficient-evidence claim and one of his court-error claims are inexcusably procedurally defaulted; that he waived his ineffective-assistance claims in his plea agreement; and that the Fourth Circuit has reviewed and rejected the balance of Mujica's claims. Accordingly, the court grants the government's motion to dismiss.

I.

In September of 2009, a grand jury returned a superseding indictment charging Mujica with (1) conspiring to possess with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers, and 500 grams or more of a mixture or substance

---

[1] According to the government, the conspiracy involved more than 1100 pounds of methamphetamine. The DEA special agent assigned to Mujica's case estimated the street value of the methamphetamine at approximately $14 million.

containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a); and possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Thereafter, Mujica pled guilty to the conspiracy charge, pursuant to a written plea agreement. Under the terms of the plea agreement, the United States agreed to move for dismissal of the remaining two counts against Mujica[2] and to recommend a reduction in Mujica's offense level if he accepted responsibility for his conduct (ultimately, Mujica received a three-level reduction). In exchange for these concessions, Mujica waived his right to appeal "any and all issues in this matter" and his right to collaterally attack his conviction or sentence. Mujica initialed every page of the plea agreement, including the page containing the appeal and collateral-attack waivers. By signing the plea agreement, Mujica affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms.

At his plea hearing, Mujica, with the assistance of a Spanish interpreter, stated under oath that he had never been treated for any mental illness or addiction to narcotic drugs of any kind, and that he was not under the influence of any drug, medication, or alcoholic beverage of any kind. Mujica confirmed that he had received a copy of the indictment against him; that he had fully discussed his case and the charges against him with his attorney; and that he was fully satisfied with his attorney's counsel, representation, and advice. Mujica also stated that although he read "very little" English, the plea agreement had been read to him in Spanish and that he understood the agreement. The court established that Mujica understood the charges against him, the range of punishment he faced, how the United States Sentencing Guidelines might apply in his case, and his right to a jury trial. The court also ensured that Mujica was aware he would

---

[2] The criminal-enterprise count alone carried a mandatory minimum sentence of twenty years.

be bound by his plea agreement, even if his sentence was more severe than he expected. The court advised Mujica that he was waiving his rights to appeal and to collaterally attack the judgment, and asked Mujica if he understood what he was waiving. Mujica responded to each question by answering, "yes." Mujica also confirmed that no one had made any promises or induced him to plead guilty.

After all of the court's inquiries, Mujica pled guilty to the conspiracy charge. But before accepting Mujica's plea, the court asked again if anything had happened during the hearing that Mujica did not understand, and he responded, "no." The court ultimately accepted Mujica's plea and found that Mujica was "fully competent and capable of entering an informed plea" and that his guilty plea was a "knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of Count One."

At Mujica's sentencing hearing, the court gave Mujica the opportunity to address the court before it pronounced sentence. Mujica did not express any desire to withdraw from the plea agreement, voice any complaints regarding the quality or effectiveness of his attorney's representation, or mention any of the issues he raises in his current § 2255 motion. The court ultimately sentenced Mujica to 350 months' imprisonment.

On appeal, Mujica's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that there were no meritorious issues for appeal, but asking the court to review the district court's fact-finding at sentencing. In addition, Mujica filed a *pro se* supplemental brief arguing that his guilty plea was not voluntary, that his counsel provided ineffective assistance, and that this court erroneously calculated his criminal-history category and improperly relied on hearsay evidence at sentencing. The Fourth Circuit affirmed by per curiam opinion. That court examined the substantive reasonableness of Mujica's sentence and whether this court (1)

properly calculated Mujica's Guidelines range; (2) considered the factors in 18 U.S.C. § 3553(a); (3) analyzed the parties' sentencing arguments; and (4) sufficiently explained the sentence. The Fourth Circuit ultimately concluded that the sentence was "both procedurally and substantively reasonable." United States v. Mujica, 442 F. App'x 856, 857 (4th Cir. 2011). In addition, the Fourth Circuit found that Mujica's claims concerning court errors and the voluntariness of his plea were meritless. The Court declined to rule on Mujica's ineffective-assistance claim because such claims are not cognizable on direct appeal when the record does not conclusively establish a right to relief. The Supreme Court of the United States denied Mujica's ensuing petition for writ of certiorari.

## II.

Mujica claims that there was insufficient evidence to support his sentence and that the court erred in failing to apply the provisions of the Fair Sentencing Act of 2010 ("FSA"). The court finds that these claims are procedurally barred because Mujica did not raise them on direct appeal and nothing excuses their default.[3] Accordingly, the court dismisses the claims.

"Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)). Claims that could have been but were not raised on direct appeal are procedurally defaulted unless the petitioner demonstrates cause for the default and actual prejudice from the failure to review the claim.[4] Id. at 622; Wainwright v. Sykes, 433 U.S. 72, 84

---

[3] Further, Mujica's claim concerning the FSA has no merit. The FSA reduced the disparity between the amount of crack cocaine and powder cocaine needed to trigger certain mandatory prison terms from a 100:1 weight ratio to an 18:1 weight ratio. The changes in the weight ratio apply to cocaine base and have no effect on cases involving methamphetamine. Because Mujica was convicted of conspiring to distribute methamphetamine, the FSA has no application to his case.

[4] To establish cause, Mujica must point to some objective factor beyond the defendant's control that impeded or prevented him from presenting his claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). Objective factors that may constitute "cause" include: (1) interference by officials that makes compliance impracticable; (2) a showing that

4

(1977); United States v. Frady, 456 U.S. 152, 170 (1972); United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Alternatively, the petitioner may demonstrate that he is actually innocent. Schlup v. Delo, 513 U.S. 298, 321 (1995); Mikalajunas, 186 F.3d at 493. Actual innocence means *factual* innocence, not merely the legal insufficiency of a conviction or sentence. Bousley, 523 U.S. at 623–24. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536–37 (2006) (internal quotation marks omitted).

Since Mujica did not raise his insufficient-evidence or FSA claims on direct appeal, they are procedurally defaulted unless he demonstrates either cause and prejudice or actual innocence. Mujica, however, does not allege any cause or prejudice to excuse his default, nor does he allege that he is actually innocent of his convictions.[5] Accordingly, the court finds that Mujica has inexcusably procedurally defaulted these claims and therefore dismisses them.

### III.

Mujica claims that his plea was not voluntary, that his sentence was unreasonable, and that the court erred in calculating his criminal-history category and providing an inadequate statement of reasons. However, the Fourth Circuit has reviewed these claims on direct appeal

---

the factual or legal basis for a claim was not reasonably available; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel. Wright v. Angelone, 151 F.3d 151, 160 n.5 (4th Cir. 1998). To show prejudice, Mujica must demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 592 (4th Cir. 2000) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

[5] To the extent Mujica's challenge to the sufficiency of the evidence supporting his sentence can be construed as a claim of actual innocence, it fails. First, Mujica only alleges that he is innocent of his sentence, not his conviction. Second, actual innocence means factual innocence, and there is nothing that remotely suggests that Mujica is factually innocent of his conviction.

and rejected them. Because Mujica cannot relitigate these claims in a § 2255 proceeding, the court dismisses them.

A federal habeas petitioner ordinarily cannot relitigate issues that have already been decided on direct review. See Withrow v. Williams, 507 U.S. 680, 720–21 (1993); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); Herman v. United States, 227 F.2d 332 (4th Cir. 1955). In this case, the Fourth Circuit found on appeal that Mujica's criminal-history claim, statement-of-reasons claim, and involuntary-plea claim had no merit.[6] The Court of Appeals also concluded that "Mujica's sentence is both procedurally and substantively reasonable."[7] Mujica, 442 F. App'x at 857. Because the Fourth Circuit has already considered these claims and rejected them, this court dismisses them on habeas review.

## IV.

Mujica alleges that his counsel provided ineffective assistance in failing to request a different interpreter and in failing to answer Mujica's questions. However, Mujica knowingly and voluntarily waived his right to collaterally attack his plea and sentence, and Mujica's

---

[6] Further, the court notes that Mujica's claim concerning the voluntariness of his plea contrasts sharply with the statements Mujica made during his plea colloquy during, where he affirmed to the court that his plea was knowing and voluntary. "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977) and citing United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295–96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

During his plea hearing, Mujica affirmed that he completely understood the terms of the plea agreement (including the appeal and collateral attack waivers), that he was entering the plea and waiving his appeal rights knowingly and voluntarily, that he was fully satisfied with his attorney's representation and advice, and that he did not challenge the government's evidence against him as it related to the elements of his offense. The court took care to ensure that Mujica understood those things and that he was entering his plea knowingly and voluntarily. The court made findings on the record that Mujica was competent to plead and that he voluntarily and knowingly entered his plea. These findings were not mere formalities, but rather reflected the court's considered opinion that Mujica was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion.

[7] The court notes that pursuant to 21 U.S.C. § 841(b)(1)(A), the minimum sentence the court could have imposed on Mujica's conviction was ten years' imprisonment, and the maximum was life imprisonment.

ineffective-assistance claims fall within the scope of that waiver. Therefore, the court dismisses these claims.

A "criminal defendant may waive his right to attack his conviction and sentence collaterally." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Courts analyze waivers of collateral review by considering both the validity and the scope of the waiver. See, e.g., United States v. Attar, 38 F.3d 727, 731–33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver depends on whether the defendant knowingly and intelligently agreed to waive the right. Id. at 731–32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221–22; see also United States v. Brown, 232 F.3d 399, 405–06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). Although the validity determination is often made based on the "adequacy of the plea colloquy—specifically, whether the district court questioned the defendant about the . . . waiver—the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

The court must also consider the scope of the waiver; that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The Fourth Circuit has highlighted a narrow class of claims that fall outside the scope of an enforceable waiver of § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea; the imposition of a sentence above the statutory maximum; or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of a waiver. See Lemaster, 403 F.3d at 220 n.2; Blick, 408 F.3d at 169–71; Attar, 38 F.3d at 732; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992).

In light of Mujica's statements during the plea colloquy, and under the totality of the circumstances, the court finds that Mujica's collateral-attack waiver is valid. And, because neither of Mujica's ineffective-assistance claims allege a complete denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor, the court finds that Mujica's claims fall within the scope of his collateral-attack waiver. Because Mujica's § 2255 waiver is valid and his claims fall within the scope of that waiver, the court dismisses Mujica's ineffective-assistance claims.

## V.

For the reasons stated, the court grants the government's motion to dismiss.

**ENTER:** January 24, 2013.

_____
UNITED STATES DISTRICT JUDGE